IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT CARBONE, | : | Case No. 2:23-cv-3443 |
| | : | |
| Plaintiffs, | : | Chief Judge Algenon L. Marbley |
| | : | |
| v. | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| WULF KAAL, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter is before this Court on two Motions to Dismiss—one from Defendants Michael Steur and Wulf Kaal (ECF No. 11) and one from Defendants Raphael Baumann, the Open Source Standards Association, and the Emerging Technology Association (ECF No. 27) (collectively, "Defendants"). For the reasons set forth below, both Motions (ECF Nos. 11, 27) are **GRANTED** on jurisdictional grounds, so this case is **DISMISSED**.

**I. BACKGROUND**

Plaintiff's complaint aptly details the complex background of the Open Source Standards Association and the Emerging Technology Association (the "organizational Defendants"), two "decentralized autonomous organizations" with which the named individual Defendants—Kaal, Baumann, and Steuer—are affiliated in a leadership, membership, and/or voting capacity. (*See* ECF No. 1 at 3–6, 8–23). According to Plaintiff, after he "voiced concerns and critiques of Kaal and his dealings with" the organizational Defendants, the individual Defendants knowingly spread a false story that Plaintiff "engaged in serious sexual misconduct" against another organization member. (*Id.* at 2, 31–32). Based on what Plaintiff alleges to be the individual Defendants' defamatory statements, the organizational Defendants' voting members expelled Plaintiff from his role with both organizations. (*Id.* at 28–36). Plaintiff claims that as a result of his "unjust

1

removal," he has suffered reputational and professional damages by way of the allegedly disparaging comments, including loss of current and future business opportunities as well as direct financial harm due to loss of unpaid organizational grants and the organization's form of currency, called "reputation tokens." (*Id.* at 36).

Seeking relief from the Defendants' alleged wrongs, Plaintiff brought suit for defamation, tortious interference with business relations, breach of fiduciary duty, and negligent misrepresentation, for which Plaintiff requests compensatory and punitive damages. (*Id.* at 37–40). Defendants moved to dismiss Plaintiff's complaint (ECF Nos. 11, 27),[1] which Plaintiff opposed (ECF No 32). These motions are now ripe for this Court's review.

## II. LAW & ANALYSIS

The parties take opposing views on the three issues raised in the Defendants' motions to dismiss: (1) whether this Court has personal jurisdiction over the Defendants; (2) whether this Court is a proper and convenient forum for the dispute; and (3) whether Plaintiff has stated an actionable claim for defamation. As is often appropriate, this Court starts with jurisdiction.

### 1. Standard of Review

Plaintiff bears the burden of establishing personal jurisdiction, under which Plaintiff must establish a *prima facie* showing of jurisdiction.[2] *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020). Not only do the parties disagree about whether this Court should exercise personal jurisdiction over Plaintiff's claims, but they also disagree about the impact of the recently amended Ohio long-arm statute on this Court's jurisdictional analysis. (*Compare* ECF No. 11 at

---

[1] The two sets of Defendants moved separately based on citizenship: Defendants Steuer and Kaal, as United States-based defendants, were served earlier than the other Defendants, who are Swiss. (ECF No. 11 at 1 n.1; ECF No 27 at 1 n.1). But as explained in both motions, each of the arguments made in one motion "apply with equal force to the other Defendants," so this Court considers these separate motions as one for purposes of its analysis. (*Id.*).

[2] Neither party requested further discovery or an evidentiary hearing and, finding neither necessary, this Court will decide both motions on the written submissions. *Root, Inc. v. Silver*, No. 2:23-CV-512, 2024 WL 85057, at *5 (S.D. Ohio Jan. 8, 2024).

10, 10 n.5, *with* ECF No. 32 at 12–13 (both discussing Ohio Rev. Code § 2307.382 (2020 S.10, eff. 4-7-2021; 2020 H. 272, eff. 12-16-2020)).

Section (A) of Ohio's long-arm statute governs specific jurisdiction, instructing that "a court may only exercise personal jurisdiction over an out-of-state defendant under one of nine enumerated criteria." *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 827 n.2 (S.D. Ohio 2021). And courts previously "construed the statute as foreclosing general jurisdiction because personal jurisdiction was only proper if the plaintiff's claim arose out of one of the statutorily identified actions [from section (A)]." *Id.* (citing *Conn v. Zakharov*, 667 F.3d 705, 717 (6th Cir. 2012)). But after the 2020 and 2021 amendments, section (C) now provides that "[i]n addition to a court's exercise of personal jurisdiction under [section] (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C). The post-amendment question posed in today's dispute is whether section (C) as amended introduced a vehicle for general jurisdiction under Ohio law. If the amended statute does provide such a vehicle, "Ohio's long-arm statute [is now] coextensive to the limits of the federal Due Process Clause." *Midwest Motor Supply Co. v. Nietsch*, No. 2:22-cv-4049, 2023 WL 8649898, at *2 n.3 (S.D. Ohio Dec. 14, 2023). Otherwise, Ohio's long-arm statute continues to require "a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Conn*, 667 F.3d at 712.

As Judge Dlott explained, federal courts have adopted each of these interpretations, and "no Ohio court has opined on the meaning of § 2307.382(C)." *Leyman v. Amazon Logistics, Inc.*, No. 1:23-cv-828, 2024 WL 2962784, at *4 n.1 (S.D. Ohio June 12, 2024). One federal court found the statutes to now be coextensive based purely on the text of section (C). *See Midwest Motor Supply Co.*, 2023 WL 8649898, at *2 n.3; *Elzayn v. Trad*, No. 2:23-cv-2407, 2024 WL

3

1367801, at *1 n.1 (S.D. Ohio Apr. 1, 2024). But courts going the other way have rejected the proposition that the amendment "collapse[d] the long-arm statute's specific jurisdiction test into the Federal standard." *Premier Prop. Sales Ltd.*, 539 F. Supp. 3d at 827 n.2. Under this latter view, section (A) continues to govern specific jurisdiction, but Ohio law "no longer precludes jurisdiction where a non-resident's 'continuous and systematic' contact with Ohio renders it at home in the state." *Id.* "This makes sense," according to another court adopting this interpretation, "because if []section (C) applies to the issue of specific jurisdiction to make the Ohio long-arm statute co-extensive with federal due process, then []section (A) no longer has any purpose." *Leyman*, 2024 WL 2962784, at *4 n.1.

This Court is persuaded by the latter of these interpretations, particularly in light of the Ohio Supreme Court's recent analysis of specific jurisdiction under both "[]section (A) of the long-arm statute and under the Due Process Clause without addressing []section (C)." *Id.* (citing *LG Chem, Ltd. v. Goulding*, 167 Ohio St. 3d 488, 2022-Ohio-2065, 194 N.E.2d 355). As "[s]tate statutes mean what state courts say they mean," *Hutchison v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), Ohio's highest court appears to have implicitly endorsed the view that section (C) did not eliminate the need for a "particularized inquiry wholly separate from the analysis of Federal Due Process law." *Conn*, 667 F.3d at 712. So, this Court starts by evaluating whether the exercise of jurisdiction over Defendants comports with section (A).

### 2. Ohio's Long-Arm Statute

In the briefing relevant to today's dispute, the parties discuss three of the nine bases for specific jurisdiction under Ohio's long-arm statute: Defendants assert that only subsections (A)(1)—regarding business transactions—and (A)(6)—regarding in-state injury caused by out-of-state conduct—are relevant, but that neither provides jurisdiction here. (ECF No. 11 at 12–14;

4

ECF No. 27 at 12–14).  Plaintiff counters that Defendants' actions satisfy subsection (A)(3), regarding in-state tortious action.  (ECF No. 32 at 26–28).

Personal jurisdiction is an individual due process issue as opposed to an issue with a court's power to hear a case.  *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 905 (6th Cir. 2006). Because of this, arguments relating to personal jurisdiction can be waived or forfeited.  *See, e.g.*, *Baker v. Bensalz Prods., Inc.*, 480 F. Supp. 3d 792, 804 n.7 (S.D. Ohio) ("Plaintiffs could have, but did not, make other arguments in support of specific personal jurisdiction over Defendants. Because they failed to do so, the Court considers any other arguments in support of specific personal jurisdiction waived."), *on reconsideration*, 478 F. Supp. 3d 618 (S.D. Ohio 2020). Relevant here, "[w]hen a party fails to raise an argument by way of responsive briefing, that argument is deemed waived[.]" *Owen v. United Way of Greater Cincinnati*, No. 1:19-cv-825, 2021 WL 1608433, at *4 (S.D. Ohio Apr. 26, 2021) (quoting *Bose v. Bea*, 947 F.3d 983, 993 (6th Cir. 2020)); *see also Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005).

As a result of Plaintiff's limited response on this issue, this Court is without the benefit of Plaintiff's defense of jurisdiction under subsections (A)(1) and (A)(6), despite Plaintiff's acknowledgement that Defendant "focus[ed] exclusively on [those] sections … of the statute[.]" (ECF No. 32 at 26–28).  So, this Court turns to the only basis upon which Plaintiff hangs his jurisdictional hat:  subsection (A)(3), which asks whether a defendant "caus[ed] tortious injury by an act or omission in" Ohio.  Ohio Rev. Code § 2307.382(A)(3).

Under this basis, "the question is whether the [Defendants] committed a tort … in [Ohio] by" communicating the allegedly defamatory statements via an Ohio-based server.  *Bochan v. La Fontaine*, 68 F. Supp. 2d 692, 698 (E.D. Va. 1999).  Plaintiff asserts, primarily based on a federal case from Virginia, that Defendants' conduct satisfies subsection (A)(3) given that:  (1)

5

Defendants' agent chose to use the Ohio-based server "because of certain advantages to doing so"; (2) "the Ohio-based server was the vehicle" for the allegedly defamatory actions; and (3) without the Ohio-based server, "the wrongful conduct would not have occurred." (ECF No. 32 at 27 (citing *Bochan*, 68 F. Supp. 2d at 698–99)).

Plaintiff is correct that the court in *Bochan* evaluated the impact of publication of allegedly libelous statements by way of a remote server. There, a Virginia resident sued Texas residents for accusing him of being a pedophile in an active "Internet newsgroup." *Bochan*, 68 F. Supp. 2d at 696. Arguing that personal jurisdiction over the Texas residents was proper in Virginia, the plaintiff explained that: (1) the messages were posted using a Virginia-based server; (2) "all defendants knew that he resides and works in Virginia"; and (3) "the reputational harm, as well as the emotional distress, would be suffered in Virginia." *Id.* at 697. The court agreed, finding defendants' conduct to constitute "a *prima facie* showing of a sufficient act" in Virginia to satisfy Virginia's corollary long-arm statute provision. *Id.* at 699. And it does not appear that such a finding turned on the plaintiff's status as a resident in the same state as the server such that plaintiff felt the brunt of the impact in Virginia. (*Contra* ECF No. 37 at 21). Rather, that "the use of [the] server in Virginia was integral to that publication" sufficed, regardless of plaintiff's residency status. *Bochan*, 68 F. Supp. 2d at 699.

As discussed in determining the scope of the long-arm statute, "[a] state's highest court is 'the final arbiter of what is state law.'" *Planned Parenthood Sw. Ohio Region v. Dewine*, 696 F.3d 490, 503 (6th Cir. 2012) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940)). But as was the case in Virginia at the time of *Bochan*, "[t]his, as it happens, is a novel question in [Ohio] and there do not appear to be any decisions from other jurisdictions that are factually identical." *Bochan*, 68 F. Supp. 2d at 698. For this reason, *Bochan* is instructive: that federal court had the

6

advantage of relying on guidance from its state's highest court, as the Supreme Court of Virginia previously exercised jurisdiction under the same provision over a nonresident who used a Virginia communications channel to block successfully the hiring of another nonresident. *See Krantz v. Air Line Pilots Ass'n, Int'l*, 245 Va. 202, 427 S.E.2d 326 (1993). Since then, in holding that similar activities "fall 'under the jurisdiction net cast by *Krantz*,' … courts have focused in large measure on the location of the Internet service provider or the server on which the bulletin board is stored and the role played by this service or hardware in facilitating the alleged tort"—not on the residency of either of the involved parties. *Bochan*, 68 F. Supp. 2d at 699 (quoting *TELCO Commc'ns v. An Apple a Day*, 977 F. Supp. 404, 408 (E.D. Va. 1997)).

Considering the verbatim wording in the Virginia long-arm statute and the lack of guidance from the Ohio courts, this Court opts to apply *Bochan*'s well-reasoned and logically sound analysis to the facts at hand, particularly given that the logic stands up as to both Plaintiff's defamation and tortious interference allegations. In so doing, this Court finds that jurisdiction under subsection (A)(3) extends to the individual Defendants whom Plaintiff alleges made the defamatory statements by way of this Ohio server: "Defendants Kaal, Bauman, [and] Steuer[.]" (ECF No. 32 at 11). While "[p]ersonal jurisdiction must be analyzed and established over each defendant independently," where, as here, this Court would "repeat itself almost verbatim for each [individual] Defendant[,] … this case is a rare instance where it is appropriate to analyze personal jurisdiction over [the individual] Defendants as a group." *Midwest Motor Supply Co.*, 2023 WL 8649898, at *2 (quoting *Days Inn Worldwide, Inc.*, 445 F.3d at 904). For each of these defendants, the Ohio server was "integral" to the publication of the information surrounding Plaintiff's alleged conduct toward another organization member such that publication was an "act" in Ohio. Said differently, the individual Defendants' statements spurred the domino effect chain of events leading

7

to Plaintiff's expulsion from the organizational Defendants, including the subsequent adverse impact to his business dealings.

And this Court is not persuaded that the choice of an Ohio-based server needed to provide some sort of tangible benefit in order to find as much. *Bochan*'s state law analysis does not turn on any special characteristics of the Virginia-based server other than that the information was published on a server based in the state in which the plaintiff brought suit. *Bochan*, 68 F. Supp. 2d at 689–99. Perhaps this Court would reason differently if *Krantz*'s progeny interpreted Virginia's statute as requiring as much. But a Virginia federal court rejected this requirement, finding unpersuasive the argument that "this tort, if it existed, did not require the Virginia facilities because the tort 'need not have to occur in Virginia.'" *TELCO Commc'ns*, 977 F. Supp. at 407. So, "because publication is a required element of defamation, and a *prima facie* showing has been made that the use of [the Ohio-based server] was integral to that publication, there is a sufficient act in [Ohio] to satisfy" subsection (A)(3). *Bochan*, 68 F. Supp. 2d at 699.

Against that backdrop, Plaintiff overgeneralizes in concluding that because of the individual Defendants' actions, "section (A) of the Ohio long-arm statute is satisfied" as to all of the Defendants. (ECF No. 32 at 27). Rather, Plaintiff must show that personal jurisdiction is proper over each defendant. *See Beydoun v. Wataniya Rests. Holding*, 768 F.3d 499, 504 (6th Cir. 2014). But subsection (A)(3) does not carry this burden for him when it comes to the organizational and unnamed Defendants. Plaintiff makes no attempt to explain how these publications should be attributed to either of the organizational Defendants or any of the John or Jane Doe Defendants, and does not provide any basis for extending the reach of Ohio's long-arm statute in this manner. Accordingly, this Court's analysis of claims against the organizational and unnamed Defendants ends here.

8

### 3. Federal Due Process

Satisfaction of Ohio's long-arm statute alone is insufficient for this Court to exercise jurisdiction over the individual Defendants: "the next question is whether these reaches exceed the constitutional grasp of the provisions." *Bochan*, 68 F. Supp. 2d at 702. And Plaintiff's allegations, even as to the individual Defendants, fare differently under the Due Process Clause than they do under the state corollary. Instead of the narrower inquiry of whether an action took place in a state, federal due process requires a defendant have "certain minimum contacts [with the state] ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). When evaluating minimum contacts, "a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783 (1984) (quoting *Shaffer v. Heitner*, 433 U. S. 186 (1977)). Specifically, courts ask whether a defendant "'purposefully directed' his activities at *residents of the forum*[.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (emphasis added) (citations omitted).

Continuing this Court's measured deference to *Bochan*, the court there emphasized that: (1) the published statements "concerned the presumably local activities of an individual each knew was a Virginia citizen"; (2) both the plaintiff "and several of his Virginia friends[] accessed the postings in Virginia"; and (3) "the reputational harm resulting from defendants' actions and allegations of pedophilia and sexual deviancy, if any, has been primarily suffered in Virginia, where Bochan lives and works." *Bochan*, 68 F. Supp. 2d at 702. Finding that "the predominant 'effects' of [the defendants'] conduct" occurred in Virginia, the court held that "these defendants could reasonably foresee being haled into court in this jurisdiction." *Id.*

9

As did the court in *Bochan*, this Court similarly sees a distinction between concluding that the individual defendants "acted" in Ohio, per Ohio's long-arm statute, and concluding that this alone constitutes sufficient minimum contacts with the state. As the Sixth Circuit noted, "[o]ur sister circuits have routinely held that 'posting allegedly [tortious] comments or information on an internet site does not, *without more*, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside).'" *Blessing v. Chandrasekhar*, 988 F.3d 889, 905 n.15 (6th Cir. 2021) (emphasis added) (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011)). And the "'something more' most likely means a sufficient showing of intent." *Johnson v. Griffin*, 85 F.4th 429, 437 (6th Cir. 2023) (Cole, J., concurring) (citing *Blessing*, 988 F.3d at 906 (finding no personal jurisdiction where "[t]here [was] no evidence that the defendants posted the[ir] tweets hoping to reach [the forum state] specifically as opposed to their Twitter followers generally"); and *Shrader*, 633 F.3d at 1241).

Certainly, "'remotely accessing Ohio servers … is one contact that this Court can consider for due process purposes,'" but Ohio cases conferring jurisdiction based on actions relating to an in-state server "often involved defendants with other, more meaningful contacts with Ohio, such as an employment relationship with an Ohio company." *Shepard & Assocs., Inc. v. Lokring Tech., LLC*, No. 1:20-cv-02488, 2022 WL 312711, at *14 (N.D. Ohio Feb. 2, 2022) (quoting *NMS, Inc. v. Brey & Co.*, No. 16-cv-545, 2016 WL 3406279, at *4, n.42 (N.D. Ohio June 21, 2016)). Without such "more meaningful contacts," another federal court in Ohio found that a nonresident third-party defendant's use of an Ohio-based server to send himself the potentially agreement-violating work file at issue and to conduct "ten or fewer" technical assistance-related communications was "fortuitous contact with Ohio that is insufficient … to establish purposeful availment." *Id.* That the nonresident also emailed and texted Ohio distributors about other matters did not change the

10

court's mind. *Id.* And in the defamation context, courts similarly focus on whether a defendant purposefully directed her allegedly defamatory communications at a forum state plaintiff who would then feel the effects of the tort in the forum state. *Bochan*, 68 F. Supp. 2d at 702–03 (collecting cases).

The record makes clear that the individual Defendants had ongoing communications by way of the Ohio-based server, some of which were relevant to the domino effect leading to today's dispute. (*See, e.g.*, ECF No. 32 at 9–11). But at present, this Court finds no legal basis to draw a jurisdictional line resting only on a defendant's number of communications over a remote server, without evidence of any more "meaningful" contacts with the forum state or any impact of their actions in the forum state. And Plaintiff's cases do not compel a contrary conclusion, as all are distinguishable in a way that provides those plaintiffs with "something more" than a connection to the forum state by way of a remote server. *See Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007 (S.D. Tex. 2018), *aff'd sub nom. Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215 (5th Cir. 2020) (finding sufficient minimum contacts where a defendant used a Texas-based server to contact a Texas-based company and where "Plaintiff produced evidence that Defendant knew that Plaintiff's offices are located in Texas, and Defendant does not deny that he knew that Plaintiff's office is located in Texas"); *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (finding same where "in addition to purposefully availing herself of the privilege of conducting computer activities in Connecticut, [the defendant] directed her allegedly tortious conduct towards MacDermid, a Connecticut corporation"). This Court therefore finds that Plaintiff did not meet his burden of showing that the individual Defendants have sufficient minimum contacts with the state of Ohio such that an exercise of jurisdiction would be proper under federal law. So, Plaintiff's case must be dismissed.

11

## III. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss (ECF Nos. 11, 27) are **GRANTED** on jurisdictional grounds, so this case is therefore **DISMISSED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  August 8, 2024**